Good morning. May it please the court, I'm Archelina Panto for a plaintiff and appellant. Can I ask you to speak up a little bit? Yes, I can be very loud. Go ahead and use your louder voice today. Will do. Thank you, Your Honor. Use your talking to teenagers voice. Your Honors, this is a simple case. The pleadings are very complicated, but the case is very simple. Plaintiff Bernadette Guevara was a dedicated nurse at Seton Medical Center for 12 years. Impeccable performance. No problems. In 2010, she started complaining about perceived contract breaches. There was understaffing. There's a lot of evidence in the record about wage and hour violations, a lot of unhappiness among the workforce. And by May of 2011, plaintiff was very frustrated with the inability to take breaks and to take her birthday off. Her birthday was a contractually promised holiday. The union contract promises the nurse's birthday as a holiday. So plaintiff was unable to take that day off. Prior to her shift on her birthday, she posts an angry post. It's profane. Plaintiff did submit a 28-J letter to update the court on developments that have been happening with Facebook and Facebook posts, and it appears as if solid federal authority is protecting these types of posts, even when there is profanity involved, when people are complaining about workplace conditions, that is protected activity. There was no basis for the termination from Seton Medical Center other than that Facebook post. She's a member of the union, wasn't she at the time? Yes. And the collective bargaining agreement provided for mediation, arbitration, et cetera, about grievances, correct? Correct. And she did not pursue those? She did attempt to pursue a grievance. The union did not assist her with that grievance. They didn't agree? It could be. There isn't a lot of evidence about that. They didn't pursue it. The union itself did not pursue it. Correct. Correct. But plaintiff should be able to prosecute an implied in fact contract claim, not only based upon her reliance on the union contract, but also upon the internal policies of the employer. Here we have a 12-year nurse that's at the top of the chain. I don't quite understand that. If she's a member of the union, the union doesn't press suit. You're left with the free speech claim. And that is what we should be talking about, right? I mean, if the union didn't press the claim and the district court found no reason to honor it, you're left with the free speech claim on the merits and the failure to allow for amendment that we should be looking at, right? That's the extent of it. We have a great body of law about judicial alchemy and how union members don't waive common law contract remedies because they're members of unions. Even if the union doesn't want to enforce the contract through its pathways, individual union members should. But I mean there's law on that. You have to go through a number of steps and you have to, you know, grieve the perceived wrong and have the union then take a number of steps and then file suit. None of that happened here. So that's a matter of discretion that we give the district court. And so really your strongest point is your free speech claim, right? The free speech claim is strong, yes. At the same time, there is a long line of precedent, including Supreme Court precedent, about contract. Why didn't she sue the union? She's a member of the union now. I mean, it's hard to translate legal remedies to working people. Let's assume that's not a problem. Okay. She brought a state court action, right? Yes. And where is that as we speak? That is pending appeal after trial in San Mateo Superior Court. But that court And Judge Wilken applied Rooker-Feldman, said Federal courts don't ordinarily interfere with an ongoing non-final State proceeding. What was wrong with her conclusion as to that? Well, Rooker-Feldman would only apply to the State defendants. And the — it's — procedurally it's very complicated because plaintiff did everything she needed to do to exhaust the writ of mandate proceedings as far as challenging the CUIAB's decision. You have immunity, don't you? No, because we're looking for injunctive relief. Plaintiff is seeking injunctive relief. Nothing should allow the State to chill free speech rights. That should be directly enforceable. What injunction — injunctive relief are you seeking against the California Unemployment Insurance Appeals Board? That it not deny benefits on the basis of a lawful, out-of-work communication that's free speech protected. It has a — Any citable Federal case that allows a Federal court to do something like that, to issue an injunction against a State board or agency to tell them to do a specific thing? X. Ray Young provides that authority. You mean Ex Parte Young? Yes. Sorry. Ex Parte Young. Thank you, Your Honor. As well as — Did that involve a State agency? That's what we call a time-honored case. It's been around for a while. Right. Did that involve a State agency? It involved, I think, collecting of taxes and not — I think it was an older agency that I don't know what it's evolved into. So, if I understand it, you're saying that they're not immune under the 11th Amendment because you're seeking injunctive relief. Is that right? Yes, that's right. And they're also — you're also saying that Rooker-Feldman doesn't apply to them. Correct. Because Feldman made it very clear that the final authority on constitutional courts, if plaintiff appropriately preserves that, which plaintiff did via England, was saying, we prefer this to be heard in the Federal jurisdiction. If there's going to be a constitutional decision made, particularly on the First Amendment to the United States Constitution, that should be made by Federal courts, not by State court. Feldman — the hearing — the holding in Feldman was that it — that decision is — should be reviewed. Any decision that's in question should be reviewed if it's legislative, ministerial, or administrative. And that's — that's what this is. This is an administrative writ, the final step in an administrative writ pursuant to the Code of Civil Procedure 1094.5. There's a case against the CUIAB from 2010 that we cited in our pleadings indicating that that plaintiff was not heard because they failed to file a writ. So it looks like a procedural quagmire. If a plaintiff fails to file the writ, that claim can never be heard. And here, because plaintiff did file the writ as required, the Court said it can't be heard. But plaintiff is not challenging that final administrative decision in writ of mandate proceedings in San Mateo Superior Court. That was simply exhaustion of the final remedy. The challenge is to the CUIAB's decision, which chills free speech rights and which actually upheld the administrative law judge's decision, even though the Employment Development Department initially awarded benefits, because this is something that typically benefits would be awarded for. A Facebook post that doesn't suggest anything unlawful cannot be a legitimate grounds for denial of employment benefits. That's not an appropriate misconduct under the Unemployment Insurance Code, Section 1256. It has to be workplace conduct. Here free speech is implicated, particularly because of the reliance on the union contract, particularly because plaintiff had been complaining consistently about these things. Do you think it was inappropriate for the hospital to read that post as a threat? Yes. Even though the post says she wants to slam the supervisor's face in the ground or something like that? Something like that, right. Taken out of context, it's at least somewhat humorous. It certainly wasn't deliberately delivered. And if we look at the Supreme Court's Alanis decision, what it looks like from Alanis is that in order for criminal charges to be brought, there needs to be some mens rea. The threat needs to be communicated. The threat needs to be communicated. And here, plaintiff was simply frustrated. You don't think an employer can discipline or terminate an employee for a threat that does not amount to a criminal threat? That's an excellent question. And ultimately, in this case, maybe a day suspension. I mean, this is a 12-year nurse at the top of the pay grade training other nurses. She provides excellent care. They had a progressive discipline policy, which plaintiff relied upon. So, first of all, would any disciplinary action be a chilling of free speech? Yes, it would be. But would a plaintiff take action on that? Does it make sense to bring that claim? No one ever reached the merits here, right? I mean, you may very well have a point. But I guess what I was trying to discuss with you earlier is that the union never sued on the contract. The plaintiff never sued the union. Judge Hawkins and you were discussing the fact that CUIAB appears not to be a state actor. There's a Rooker-Feldman issue. And as far as I can tell, I'm sorry, I made a mistake. Seton's not a state actor. And so your First Amendment claim was dismissed on that basis. That's beyond all the cases I understand. Well, against Seton Medical Center, California constitutional privacy should also protect. The particular mischief banned by the California Constitution privacy clause is taking information improperly obtained and using it in an improper fashion. That's a legitimate basis that goes against private actors. Defendant Seton Medical Center is arguing that First Amendment free speech, either federal or state, does not apply. We, of course, agree about federal free speech for Seton Medical Center. But on the state constitutional issue, can a private actor be sued under the California Constitution for free speech? That's why we filed the motion for certification potentially to the Supreme Court. If that issue needs to be decided, probably the Supreme Court of California should decide it. But we should be given the chance to be heard on the merits on these claims. Had we been given the opportunity to argue, I would have brought to Judge Wilkins' attention that the privacy claim under the California Constitution should move forward, if not the free speech claim, which I understand is a controversial issue. Did you want to reserve some time? Yes, please. Thank you very much. Good morning, Your Honors. I'm Marlene Morocco, and I'm representing Defendant Seton, and I will be for Appellant Seton, and that is, this is a simple case. This is a simple case. Ms. Guevara was terminated after she posted a threatening message on Facebook that concluded, I would do, with regard to her manager, I would do anything to smack you down and pound you. We've read all that, obviously, but it seems to me that, as I was discussing with Ms. Ponto at the end, the question is really, legally, whether or not this woman has been denied at least a motion for summary judgment, some discovery, or an elucidation of the merits of her claims. There are a number of procedural issues that have denied her the right, the right to be heard. Is it correct, you represent Seton? Yes. Is it correct, on the basis of the California Constitution's free speech clause, to prohibit her from doing so? Yes. Golden Gateway Center versus Golden Gateway Tenants Association, cited in our brief, could not be more clear. Yeah, but Golden Gateway was a plurality opinion, and so I'm not sure that it has a precedential effect here. It was a plurality opinion, Your Honor, but there's not a single opinion that Appellant can point to where any California court has said, post that decision, that has suggested there's some private right of action for free speech under the California Constitution. Well, in light of the absence of controlling authority, do we certify? What do we do? Your Honor, I would not think that certification would be appropriate in this case. This is not a case where there's divided authority. There's not a case where there's some decisions that suggest you can have a private right of action for deprivation of free speech under the California Constitution. But there does seem to be a wave of decisions, you know, saying that it applies – that it doesn't apply to private actors. That it does apply, that the – that Article I, Section 2, the free speech provision applies to? It does not apply. I think that's where the wave is. It does not apply. That's right. That's right. Exactly. And that's what was recognized by the California Supreme Court. I mean, neither – So you're saying that's enough for us? I am saying that's enough, Your Honor. I am. And they're saying that neither the legislative history, neither the text of the free speech clause, nor our case law – this is from 2010 – reveals an intent to depart from these bedrock principles. Then you talk about the history, and they say we hold Article I, Section 2, Subdivision A, only protects against state action. There's just no basis here. I'm sorry. Do you – I'm sorry. Do you agree that the Eleventh Amendment is not of immunity? I don't represent the – Oh, that's right. I'm sorry. Yeah. I'm sorry. Go ahead. I'm only representing Seton certainly didn't have immunity. Okay. I'm sorry. Go ahead. And I don't – I just had a quick procedural question. I'm not even sure this is germane. But if the Labor Relations Act claim between Ms. Guevara and the CUIAB was not brought or dismissed in a separate proceeding, we wouldn't have jurisdiction over the claims you're talking about, right? Correct. Nondiverse parties, California statute? No. Okay. Just the free speech claim. Correct. Correct. The – and with regards to – I don't know if Your Honors would like me to address the breach of contract claim, if you have any questions about that. To me, it's very clear. She has talks of an implied contract, but the truth of the matter is it's the union contract. And even the progressive discipline policy that she has – Ms. Guevara has pointed to, it's in the record at ER 1094, actually states – it's a standards of conduct and corrective discipline policy, but it says it applies to all associates unless otherwise dictated by a union contractual agreement. I mean, the policy she's pointing to did not even apply to her. I think the law is very clear that when you're seeking an action, breach of contract based on your union agreement, it's preempted by Section 301. If she had – after the statement in the Facebook posting about that your client considered and considers to be a threat, if she had put in for in joke, what would your position be? My position would be the same, Your Honor, because – Still a threat even though she said joke. Well, my position from a legal perspective in terms of what she can and cannot pursue would be the same. At heart, she's trying to pursue a breach, a wrongful termination action. Her employment contract through the union agreement addresses when she can be terminated or cannot. And in terms of her – I just want to be really clear. She's had a full and complete day in court. She had a trial at the state court where her claims were addressed on the merits. Some were disposed of summary judgment. Three claims went to trial on the merits. She has had her day in court. And with regards to this issue of Facebook postings in general and the supplemental authorities, which I addressed in my own response, I just want to say to the extent that she – Ms. Guevara is going to allege, well, Facebook postings we now know are protected under the NLRA, that's Garmin preemption, and the court wouldn't have jurisdiction over that either. So even if she had said in the rant, what I'm about to say is a joke, and then she had made the statement that your client considers a threat, you would still consider that a threat? Your Honor, I don't know what Seton would have done, and that is really the question. But I just would remind the Court, they called the police, and the manager in question got a temporary restraining order, went to court and got one. So someone, a judicial officer, concluded it was a serious threat. Well, I do want to give up my time at this time. Thank you very much, Your Honor. Good morning. May it please the Court. Beverly Myers, Deputy Attorney General, on behalf of the CUIEB Defendants. I think in a nutshell, the district court got it right. The Rooker-Feldman doctrine bars this lawsuit. Does the Eleventh Amendment – I didn't see – I've been looking here. The Eleventh Amendment doesn't – they don't get immunity because she was seeking injunctive relief, but I didn't see in her Federal complaint that she was seeking injunctive relief. I'm going to ask her to point it to me exactly where she's seeking injunctive relief. Yeah, I'd like her to answer that. My general recollection was that she was seeking injunctive relief and declaratory relief and damages in both her – well, in her And we believe that based upon the Eleventh Amendment, certainly the CUIEB is out. The entity itself has a total Eleventh Amendment immunity. And then in terms of the executive director, Dresser, he's also not a person under 1983 because he was acting in his official capacity. And then in terms of – he also doesn't have liability under the Eleventh Amendment. He – the only thing she could bring under Eleventh Amendment that would be exempt from it would be some kind of ex parte young relief. But, again, as the Court pointed out, that type of relief that she was seeking is really just not feasible. Stop the CUIEB or Dresser or somebody from enforcing these general kinds of laws in the future. I mean, we're talking about this one Facebook post. We're talking about one CUIEB decision on it that actually went up to the Superior Court. Let me just give the Court briefly a little reiteration of what happened so we're clear procedurally. So you had the Employment Development Department, who made an initial determination about benefits and actually found that she was entitled to benefits. But that's not the final arbiter of that in State court. The final arbiter of that is the Unemployment Insurance Appeals Board, and that's after an evidentiary – In the microphone. For some reason, you're cutting out. Oh, I'm sorry. And that's after an evidentiary hearing that was granted by an Administrative Law Judge. There what was before that court was the issue of misconduct. In California you get unemployment benefits unless you're terminated for misconduct. Wow, I'm booming. Now you are. Okay. So misconduct under precedent benefit decisions before the Unemployment Insurance Appeals Board includes a duty owed by an employee to an employer. And that duty can be set forth in an employment policy. And Seton's employment policy basically said that an employee should not make threatening or abusive statements regarding the workplace. So that ended up being a violation of that policy and therefore was misconduct. So Ms. Guevara then took the case, as she was entitled to by California statute, up to the California Superior Court by writ of administrative mandate. And but at that time she – I'll just kind of adjust back and forth – failed to name Seton as the real party in interest. And clearly that was an indispensable party because Seton, if Seton were to be adjudged as owing this money, it would come from their reserve account. So employers are actually real parties in interest. So the court found she did not timely name Seton, nor could she ever timely name Seton because a six-month statute of limitations was in place. And therefore, there was a judgment. And in that judgment, that had the – in other words, the court sustained the demur without granting leave to amend, and we got a judgment. And basically what the judgment did is it stated that there – that Guevara was not entitled to unemployment benefits. So coming then into Federal court, Guevara then seeks to undo that judgment by the relief she's seeking. And that's exactly what Rooker-Feldman does not permit. I think I've addressed the Court's issue about injunctive relief and CUIB having immunity. And then also Ms. Guevara was claiming that the CUIAB's writ to the superior court, that superior court action is an administrative action. That's just simply not true. It's a judicial proceeding with the judge proceeding over it. So I'm not sure. Clearly, where the – before the administrative – the Unemployment Insurance Appeals Board, that was an administrative proceeding, clearly. And just one final point I'll make, which is I don't believe that Ms. Guevara could ever amend, as the district court found, because really at the heart of this is she's not happy with the decision by the administrative law judge or the Unemployment Insurance Appeals Board in affirming that decision. So that's really at the crux of this, at the heart of it all. And that should have been that appeal through the superior court that she failed to pursue properly, procedurally. And so she can't now sue them in federal court because they have quasi-judicial immunity from suit. Thank you. Thank you. Please come forward. You have two minutes and 13 seconds left. Yes. To answer Your Honor's first question, in the E.R. 1061, we're asking for declaratory and injunctive relief. Declaratory relief could be very simple to the CUIAB defendants. It's not appropriate to make a decision based on the content of free speech regarding misconduct. As far as Ms. Meyers' arguments that the – that the E.R. 1061 would be the original E.D.D. decision then was evaluated, that was at the behest of Seton Medical Center. So Seton Medical Center contested Plaintiff Guevara's receiving of unemployment benefits. They said this is misconduct, at which point plaintiff did appear and argued for her rights that this is not work misconduct at all. It's out of – it's lawful out-of-work conduct that did not harm the employer. And the additional authority cited in our 28-J letter lean in that direction, that this is protected activity. Ms. Schor. I read your complaint. It seems like you're seeking or that Ms. Guevara's only really seeking a declaration that CUIAB acted unconstitutionally and then damages, I guess. Is that incorrect? Plaintiff would be content with that relief. Can I ask you, you were not given an opportunity to amend. Could you tell us in a minute or so what an amended – if you were given that opportunity, what you would say on behalf of your client? Sure. Certainly on behalf of – or against Seton Medical Center, we would allege the privacy claim as well as the free speech claim. That would help avoid the can there be action taken against a private employer issue. There's no question on privacy. Against the State, I would put more of these cases in that show that this is an administrative proceeding. It's the way the law is structured in California. Just an old lawyer from Arizona, but I don't know. Here, California is sort of a field code State. I don't know what you put in a complaint, but where I come from, you don't put cases in a complaint. Especially with this – Do you in California? For implied in fact contract, I always will, because it's very common law based. It isn't – I'm good. You've satisfied me. All right. Thank you, Your Honor, very much. Thank you very much. Thank you to all of you. Appreciate your arguments. Very helpful today. That case is now submitted.
judges: Hawkins, Murguia, Murphy